### SUPREME COURT.

DAVID Dows and others agt. THE VILLAGE OF IRVINGTON and others.

*Office and officers — Assessment — When trustees of a village are officers de facto and competent to lay an assessment — Election — Irregularities which will not be rectified in the courts—Defects which will not be inquired into collaterally.*

The fact that the president and trustees of the village of Irvington failed to take the prescribed oath of office before entering upon the performance of their duties as such trustees and president, does not affect the validity of their action in organizing themselves into a board of water commissioners under the act of 1875, chapter 181, to furnish water to said village; they having taken possession of their offices and the public having acquiesced in their claim and tenure, they are officers *de facto* and competent to lay an assessment.

Irregularities in an electon which would not change the result will not be rectified in the courts. If an election is irregular, *certiorari* is the proper remedy.

The defects that the assessment-roll was made by officers who had not qualified, and contained names not properly on it, and omitted others which ought to have been on, cannot be inquired into collaterally.

*Special Term, August,* 1883.

*John A. Bryan* and *Samuel E. Lyon,* for plaintiffs.

*L. T. Yale,* for defendants.

DYKMAN, *J.* — The individual defendants are president and trustees of the village of Irvington, in Westchester county. Under the act of 1875 (*chap.* 181) these gentlemen organized themselves into a board of water commissioners to furnish water to the inhabitants of their village, and pursuant to the statute held an election and submitted to the village the question whether it would have water introduced or not. A majority of the votes having been cast in favor of the project, the water commissioners were about to proceed when the plaintiffs intervened and in this action secured a preliminary injunction restraining any further action on the defendants' part.

The case is now submitted for judgment on a statement of facts agreed to by both plaintiffs and defendants.

The plaintiffs are taxpayers and, under the taxpayers' act of 1872, allege that the defendants' project involves waste and injury to the property of the village of Irvington. It is not alleged that funds in possession or expectation will be squandered; but the plaintiffs rest their case on the proposition that contracts will be executed by the defendants, and bonds issued or an assessment laid, while neither contracts, bonds nor assessment will be valid.

It will be assumed to be within the taxpayers' act to prevent any village from falling into such a plight.

The invalidity of contracts and assessment is claimed to result from three facts : 1. That the individual defendants acted without taking the oath of office prescribel. 2. That the assessment-roll of 1882, used in the election referred to, was invalid and avoids the election. 3. That at the election votes were improperly received and excluded.

Let it be conceded that the oath which the defendants took and subscribed was an idle ceremony, because it was administered by an officer lacking authority. Nevertheless, these gentlemen took possession of the office and the public have acquiesced in their claim and tenure. They are, therefore, officers *de facto* and competent to lay an assessment.

Judge Cooley, writing on taxation, defines an officer *de facto* "to be one who has the reputation of being the officer he assumes to be and yet is not a good officer in point of law" (*Cooley on Taxation*, 185). "The public acquiescence and reputation attach certain important consequences to his occupation of the office which the interest of the state does not permit to depend upon his own motives or the degree of plausibility which attaches to his claim." "It has sometimes been urged that in tax proceedings there was no proper room for the application of the doctrine which is applied in other cases in support of action by officers *de facto*, that the proceedings are summary and for the most part *ex parte*, that they may deprive the owner of his freehold by means of process, which usually and perhaps necessarily is somewhat arbitrary, and that he is therefore entitled of right to have all the security which the law intended he should have in the character and standing of an officer duly and properly chosen for the particular duty *in the official oath of such an officer* when one is required by law; in the official bond if one is made necessary, and indeed such security as would be afforded by a strict compliance with every provision which has been made by the revenue laws for the protection of taxpayers. The reasons are plausible, but they are not very conclusive. Indeed, if official action of officers *de facto* in judicial positions can be sustained as often as it has been, though not only property but also liberty may depend upon it, it is difficult to suggest any .distinguishing reason to remove tax cases from the application of the same principle. The clear and very strong preponderance of authority is that the general policy of the law requires the acts of officers *de facto* to be sustained under the same circumstances and on the same reasons that sustain them in others" (*Ibid, p.* 190).

The case of *Merritt* agt. *The Village of Portchester* (71 *N. Y.*, 309), is cited by the plaintiff and is opposed to the doctrine of judge Cooley's treatise.

Several years later the same court, with many members

still sitting, decided *The Matter of the Petition of Kendall* (85 *N. Y.*, 362). This proceeding was to vacate an assessment because commissioners to examine all such contracts in New York, and who certified that this one was free from fraud, had failed to take the oath of office. The assessment was held valid as the act of officers *de facto*.

"It would be a monstrous proposition," writes judge EARL, "to hold that the action of town assessors or of trustees of villages, who, under the general village act perform the duties of assessors was void because they had neglected to take any official oath. It is no answer to the validity of the action of these commissioners as *de facto* officers, that their action could result in taking private property for assessments which might be consequent upon their action."

These decisions are reconciled by the reflection that the commissioners of estimate and apportionment in the Portchester case were not public officers, while the commissioners in the Matter of Kendall were.

Judge PLATT, *In the Matter of Attorneys* (20 *Johns.*, 493), defined office to be "an employment on behalf of the government, in any station or public trust not merely transient, occasional or incidental." Tried by this test, the commissioners in the Portchester case fall outside the definition of office. Their employment was transient and incidental to the larger scheme which the trustees of that village were conducting. On the other hand the commissioners in the Kendall case were appointed by the legislature to examine every public improvement in New York city for which an assessment had been laid, and certify whether each was free from fraud. These commissioners were public officers.

There is another test. The appointment of commissioners of estimate and apportionment has from time to time been entrusted to the courts by the legislature, and no question made of the constitutionality of the practice. Yet the constitution forbade the legislature to intrust to the courts appointment to public office (*Const. of* 1846, *art.* 6, *sec.* 8).

Such officers as the court can appoint are not public officers (*Matter of Hathaway*, 71 *N. Y.*, 242).

The Portchester commissioners, like referees, commissioners of appraisal, and the like, are not public officers, and could not claim to be *de facto* officials. On the contrary, the commissioners in the Kendall, and the village trustees in this case, are public officers and can claim *de facto* powers (*People* agt. *Bartlett*, 6 *Wend.*, 422).

It is a canon of election law that irregularities which would not change the result will not be rectified in the courts (*Dillon on Municipal Corporations* [3d ed.], sec. 197, n. 3). This disposes of the irregularities complained of in this case, for it is not pretended that the vote would have been adverse to the introduction of water into Irvington had all the disputed votes gone against it. If the election was irregular, *certiorari* is the plaintiff's remedy.

It is alleged that the assessment-roll of 1882 was made by officers who had not qualified and contains names not properly on it, and omits others which ought to be. Those defects cannot be inquired into collaterally.

Judgment should be for the defendants, dismissing the complaint upon the merits, with costs, and with leave to try the remaining questions in issue.